Case 1:17-cv-00229   Document 32   Filed on 07/18/19 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
July 18, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| CAMERON COUNTY HOUSING AUTHORITY and COMMUNITY HOUSING & ECONOMIC DEVELOPMENT CORP., Plaintiffs, v. CITY OF PORT ISABEL, CITY OF PORT ISABEL CITY COMMISSION, and PORT ISABEL PLANNING AND ZONING COMMISSION, Defendants. | Civil Action No. 1:17-cv-00229 |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is City of Port Isabel ("Port Isabel"), City of Port Isabel City Commission ("City Commission"), and Port Isabel Planning and Zoning Commission's ("P&Z Commission") (collectively "Defendants") "Defendant's Amended Motion for Summary Judgment and Brief In Support" ("Defendants' MSJ") (Docket No. 26)[1]. Cameron County Housing Authority ("CCHA") and Community Housing and Economic Development Corp. ("CHEDC") (collectively "Plaintiffs") responded. Docket No. 28. Defendants then replied. Docket No. 30. For the reasons stated below, Defendants' MSJ is **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs are organizations which provide affordable housing to low-income families. CCHA owns CHEDC. CHEDC owns, and CCHA operates, the Neptune Apartments ("the Apartments"): a multi-family complex in Port Isabel, Texas, and the lots on which the Apartments sit. In 2008, Hurricane Dolly severely damaged the Apartments, which eventually caused all residents to move elsewhere. The Apartments have been vacant since 2010.

In 2014, the Lower Rio Grande Valley Development Council ("LRGVDC") awarded Plaintiffs $1.8 million in federal funds to rebuild the Apartments. Plaintiffs' original plan was to construct

---

[1] Defendants' MSJ is an amended version of "Defendant's Motion for Summary Judgment" ("Defendants' Original Motion") (Docket No. 24). The Court did not consider Defendants' Original Motion in its analysis because Defendants' Original Motion did not comply with the Court's Local Rules of Civil Procedure. *See* L.R. Civ. P. 6(F).

[2] All facts stated were obtained from these documents: Docket Nos. 1, 28. Since Defendants are the moving party, all factual issues must be resolved in favor of Plaintiffs. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 401–02 (5th Cir. 2005).

1

a 26-unit mixed-income development. To carry out this plan, Plaintiffs needed to re-zone the lots on which the Apartments sit. Port Isabel has a two-step process for changing the zoning of a lot. First, the party seeking a zoning variance must apply to the P&Z Commission, which then recommends to the City Commission whether the zoning variance be approved or not approved. Second, independent of the P&Z Commission's recommendation, the party must then submit the same application to the City Commission, which may either approve or disapprove the zoning variance. Although the P&Z Commission issues a recommendation, only the City Commission's decision is final.

On March 11, 2015, the P&Z Commission held a hearing about Plaintiffs' requested zoning variance and plan to build a 26-unit complex. Before and during the hearing, many members of the community expressed their general disapproval for the project. The P&Z Commission unanimously denied Plaintiffs' request. Thereafter, Plaintiffs withdrew their application for the 26-unit complex. The City Commission never reviewed the P&Z Commission's recommendation and never made a final decision on Plaintiffs' requested zoning changes.

Plaintiffs then altered their plans and received LRGVDC funding for a 16-unit complex on the same lots. Plaintiffs' new plans also required a zoning change. But before requesting a hearing before the P&Z Commission, Plaintiffs engaged the Community Development Corporation at Brownsville ("CDCB") to conduct community outreach to try to ameliorate community members' concerns about the project. CDCB canvassed the neighborhood, met with residents, and held community meetings.

In September 2015, CCHA met with members of the City Commission and Mayor Joe Vega ("Mayor Vega"). CCHA alleges the city representatives stated Port Isabel would only issue building permits for a complex with 10 units or fewer. CCHA applied for and received a reduced amount of funding for a 10-unit complex from LRGVDC.

On October 28, 2015, CCHA submitted final plans and permit applications to build a 10-unit complex to the Port Isabel building inspector. This new plan would not require any zoning changes. On November 10, 2015, CCHA met with the Port Isabel building inspector, City Manager Jared Hockema ("City Manager Hockema"), and Mayor Vega. CCHA alleges that, during this second meeting, the city representatives stated Port Isabel would only issue building permits for a maximum of four single-family homes on the Apartments' site.

On November 13, 2015, CCHA submitted plat amendments to build five single-family rental homes on the Apartments' site to City Manager Hockema. CCHA then asked LRGVDC for funding, but LRGVDC refused, rendering the Plaintiffs' application moot.

On November 6, 2017, Plaintiffs sued Defendants for violating the Fair Housing Act ("FHA"), Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1982, and the Fourteenth Amendment to the United States Constitution. Docket No. 1 at 13–15.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant has established that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party'". *Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 322. If the movant satisfies its burden, the non-movant must "come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Wheeler*, 415 F.3d at 402 (citing *Celotex*, 477 U.S. at 324). In determining whether a fact issue exists, the Court must view all evidence in the light most favorable to the non-moving party. *Wheeler*, 415 F.3d at 402 (citing *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Factual controversies are resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. DISCUSSION

### A. Defendants City Commission and P&Z Commission

The capacity of an entity to sue or be sued is determined "by the law of the state where the court is located[.]" Fed. R. Civ. P. 17(b). Here, according to Texas law, Port Isabel is a home rule unit of local government. Docket No. 1 at 4; Docket No. 26-6 at 1. "A Texas home rule city is organized not unlike a corporation…[it] is allowed to designate whether one of its own subdivisions can be sued as an independent entity." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). Without such an explicit designation, subdivisions of a Texas home rule city—such as the City Commission and P&Z Commission—cannot independently sue or be sued.

3

*Id.* Instead, the subdivisions may only participate in litigation "in concert with the government itself." *Id.* (citing *Taylor v. Administrator of the SBA*, 722 F.2d 105, 110–11 (5th Cir. 1983)).

Port Isabel's Home Rule Charter ("the Charter") provides that the only the municipality may sue or be sued. Home Rule Charter, City of Port Isabel, Texas, § 1.02, *see also* Docket No. 26-6 at 1. But the Charter does not permit the City Commission or P&Z Commission to sue or be sued. Thus, neither the City Commission nor the P&Z Commission have an independent jural existence and all claims against them must be dismissed. *Id.* at 314.

B. Defendant Port Isabel

Plaintiffs make many statutory and constitutional claims against Port Isabel. *See generally* Docket No. 1. The Court will address each in turn.

i. Fair Housing Act Claims

Any "aggrieved person" may file a civil action in federal court for alleged violations of the Fair Housing Act ("FHA"). 42 U.S.C. § 3613(a)(1). An "aggrieved person" under the FHA includes anyone who "claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i). The definition of "aggrieved person" is intentionally broad and reflects a Congressional desire to confer standing under the FHA to the full limits of Article III of the United States Constitution ("Article III"). *Thompson v. North American Stainless, L.P.*, 562 U.S. 170, 176 (2011); *see also NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010). Thus, since Plaintiffs claim injury because of a discriminatory housing practice, Plaintiffs may file a civil action for alleged violations of the FHA if they meet the standing requirements of Article III.

To have standing, Article III requires Plaintiffs to show (1) an "injury in fact"—a concrete and particularized invasion of a legally protected interest; (2) the injury in fact is fairly traceable to Port Isabel's acts or omissions; and (3) the injury in fact would be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Plaintiffs showed that the P&Z Commission unanimously recommended the City Commission deny their requested zoning change. Plaintiffs also presented evidence of unofficial conversations with various Port Isabel government officials. But neither the P&Z Commission nor individual city officials speaking off the record have the authority to issue a final decision on a requested zoning change; that authority lies solely with the City Commission. Docket No. 26-1 at 63. There is no evidence the City Commission ever took any official action on Plaintiffs' request or that Plaintiffs ever asked the City Commission to take any such official action. And while Plaintiffs

allege Port Isabel denied their request for building permits to construct a 10-unit complex on the relevant lots, and that said 10-unit complex did not require action from the P&Z Commission or the City Commission, Plaintiffs produced no concrete evidence to support this allegation beyond conclusory assertions and hearsay statements. *See* Docket No. 28 at 27, Docket No. 28-1 at 10, 39. Conclusory assertions and hearsay evidence inadmissible at trial cannot be used to create a genuine dispute of material fact to avoid summary judgment. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004); *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685 (5th Cir. 2011). Without concrete, factual evidence that Port Isabel took any official action on Plaintiffs' request, Plaintiffs' FHA claims are not traceable to Port Isabel. Thus, Plaintiffs lack standing to assert an FHA claim against Port Isabel and summary judgment is warranted on Plaintiffs' FHA claims.

    ii. Right to Lease, Right to Contract Real Property, and Title VI Claims[3]

All citizens have the right to (1) make and enforce contracts and (2) "inherit, purchase, lease, sell, hold, and convey real and personal property" free from racial discrimination. 42 U.S.C. §§ 1981(a), 1982. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, prohibits organizations which receive federal financial assistance from discriminating based on race. To state a valid cause of action under Title VI, § 1981, § 1982, or § 3617, Plaintiffs must prove Port Isabel acted with discriminatory intent. *Powell v. Zurich Am. Ins. Co.*, 653 F. App'x 292, 296–97 (5th Cir. 2016) (§ 1981 and § 1982); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)) (Title VI). Plaintiffs can prove Port Isabel acted with discriminatory intent with either direct or circumstantial evidence. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).

    A. Direct Evidence

Direct evidence is evidence which "proves the fact of discriminatory animus without inference or presumption." *Id.* at 897. If Plaintiffs produce direct evidence that discriminatory animus played

---

[3] Claims of intentional discrimination under all three statutes are analyzed under the same framework applied to a Title VII intentional discrimination claim. *See Baldwin v. Univ of Tex.*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997) ("The court's inquiry into intentional race . . . discrimination is essentially the same for individual actions brought under . . . Title VI and Title VII."); *Jones v. Robinson Property Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) ("Jones presents a claim for discrimination under both Title VII and § 1981, but the analysis under both statutes are identical[.]"); *Powell v. Zurich Am. Ins. Co.*, 653 F. App'x 292, 296–97 (5th Cir. 2016) (analyzing § 1981 and § 1982 claims under the same framework). The Court will therefore analyze these three claims together.

a role in one of Port Isabel decisions, they may bypass the burden-shifting analysis used in circumstantial evidence cases. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1984).

In support, Plaintiffs did not identify any evidence they believe proves Defendants' discriminatory intent without inference or presumption. *See* Docket No. 28 at 41–42. Plaintiffs presumably refer to the statements made by community members at the P&Z Commission meeting in March 2015. *See id.* at 15–16. But said statements cannot qualify as direct evidence of discriminatory animus because Plaintiffs did not produce evidence that Port Isabel took any official action in response to these public statements.

B. Circumstantial Evidence

"In the absence of direct evidence of discriminatory intent, a plaintiff may proffer circumstantial evidence of discrimination under the *McDonnell Douglas* burden shifting framework." *Powell*, 653 F. App'x at 297; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Since Plaintiffs did not produce direct evidence of Port Isabel's discriminatory intent, Plaintiffs must proffer circumstantial evidence of said discriminatory intent under the *McDonnell Douglas* burden-shifting framework to survive summary judgment. *See Powell*, 653 F. App'x at 296–97.

First, Plaintiffs must establish a *prima facie* case of intentional discrimination by a preponderance of the evidence. *Powell*, 653 F. App'x at 297. To do so, Plaintiffs must show "(1) that [they are members] of a racial minority; (2) that [Port Isabel] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Id.* (quoting *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003)). While Plaintiffs' burden to make a *prima facie* case "is not onerous, it requires [Plaintiffs] to demonstrate acts that if otherwise unexplained are more likely than not based on the consideration of impermissible factors." *Id.* (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (internal quotations omitted)).

As stated above, Plaintiffs did not show that Port Isabel took any official action in response to Plaintiffs' request for a zoning change. Thus, Plaintiffs did not raise a genuine dispute of material fact about whether Port Isabel took actions "that . . . are more likely than not based on the consideration of impermissible factors," which necessarily means Plaintiffs did not prove a *prima facie* case of intentional discrimination. *Powell*, 653 F. App'x at 297. Summary judgment is therefore warranted for Plaintiffs' § 1981, § 1982, and Title VI claims.

    iii.    Plaintiffs' Fourteenth Amendment Equal Protection Claim

"Municipal liability under [42 U.S.C. § 1983] requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom." *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 227 (5th Cir. 2008). Any "persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom" qualifies as a municipality's "official policy." *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*)).

"Only those municipal officers who have final policymaking authority may . . . subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Whether a certain municipal officer has final policymaking authority is a question of state law. *Id.* The relevant state law, the Charter, places final policymaking authority for zoning changes in Port Isabel with the City Commission. Docket 26-1 at 63. Thus, for a § 1983 analysis, only the City Commission is a final policymaker whose actions may create Defendant's liability.

As stated above, the City Commission took no official action in response to Plaintiffs' requested zoning change. Plaintiffs therefore failed to show that a final policymaker, the City Commission, adopted and promulgated an official policy which deprived Plaintiffs of their constitutional rights under the Fourteenth Amendment.

Plaintiffs similarly failed to establish that a governmental custom deprived them of their constitutional rights. While Plaintiffs argue the City Commission knew that members of the P&Z Commission "rely solely on presentations made at public hearings" when deciding on a requested zoning change, and that the P&Z Commission's actions constitute a custom because of their inclusion in Defendant's "Comprehensive Plan," Plaintiffs presented no evidence that the City Commission itself took any action based on this alleged custom. Plaintiffs therefore did not demonstrate a genuine dispute of material fact about whether the City Commission used the alleged custom to violate their constitutional rights. Summary judgment is warranted for Plaintiffs' § 1983 claim.

    iv.    Declaratory, Injunctive, and Punitive Relief

As stated above, Plaintiffs failed to raise a genuine dispute of material fact over Defendants' liability under the FHA, Title VI, 42 U.S.C. §§§ 1981, 1982, or 1983. Since Plaintiffs did not

establish Defendants are liable under any of those statutes, declaratory, injunctive, or punitive relief are not authorized. Summary judgment is therefore warranted.

### IV. **CONCLUSION**

Defendants' MSJ (Docket No. 26) is hereby **GRANTED**. All claims against Defendants City of Port Isabel City Commission and City of Port Isabel Planning and Zoning Commission are hereby **DISMISSED WITH PREJUDICE**. All claims against Defendant City of Port Isabel are **DISMISSED WITHOUT PREJUDICE** and the Clerk of Court is **ORDERED** to close this case.

Signed on this 18th day of July, 2019.

Rolando Olvera
United States District Judge